# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MELVIN R. ORTIZ,

      Plaintiff,

  -vs-                                                      No. CIV 97-0738 JC/LFG

BRUCE BABBITT, Secretary,
Department of Interior

      Defendant.

## **MEMORANDUM OPINION**

THIS MATTER came on for consideration of Defendant's Motion for Summary Judgment, filed October 15, 1998 *(Doc. 59)* and Plaintiff's Request for Oral Argument on the Government's Motion for Summary Judgment, filed January 22, 1999 *(Doc. 73)*. The Court has reviewed the motion, memoranda and the relevant authorities. The Court finds that oral argument is not necessary to decide Defendant's Motion for Summary Judgment and will deny Plaintiff's Request for Oral Argument on that basis. The Court further finds that Defendant's Motion for Summary Judgment is well taken and will be granted.

### Background

This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging employment discrimination based on national origin and reprisal for engaging in protected opposition to discriminatory practices.[1] Mr. Ortiz complains that the United States Fish and Wildlife

---

[1] On April 14, 1998, I dismissed all claims except Plaintiff's Title VII claims found in Count I of the Complaint.

Service ("FWS") denied his requests that he be granted leave while he served a prison sentence because he was of Spanish national origin and had previously filed Equal Employment Opportunity ("EEO") complaints challenging the promotion practices of FWS. Because he was denied leave, Mr. Ortiz was classified as Absent Without Leave while he served his prison sentence, and his employment was terminated in May 1995.

The FWS employed Plaintiff, Melvin Ortiz, as a realty specialist beginning in 1969. Mr. Ortiz, along with several other Hispanic employees, complained that FWS hiring and promotion policies resulted in a "glass ceiling" for Hispanics. Mr. Ortiz filed an EEO complaint in 1992, alleging that he was not promoted to GS-12 because of discrimination by FWS managers and supervisors against Hispanics. His complaint was settled in 1993 when FWS promoted him to the position of GS-12 program analyst and placed him under the supervision of Charles Ault. Plaintiff presents evidence that Ault knew that the transfer was part of the settlement of some type of a complaint by Ortiz. Plaintiff also presents evidence that Ault had a personal bias against Ortiz, viewing Ortiz to be a problem employee, not competent, and a troublemaker who was disruptive to FWS. *See* Affidavit of Thomas Baca, Ex. 14 to Pl.'s Resp.[2]

Ortiz was convicted of aggravated battery in 1994 as a result of an altercation in which Mr. Ortiz shot his neighbor in the shoulder or chest region. He was sentenced to 364 days in prison, but was released pending his appeal. There is evidence that Ault and other FWS employees knew of the conviction and sentence. On or about February 17, 1995, Ortiz was notified that his conviction was affirmed by the New Mexico Court of Appeals, and that he had to turn himself in by

---

[2] Baca's Affidavit is evidence that Ault developed a personal bias against Ortiz, but does not provide any indication as to whether the bias was due to Ault's animus against Hispanic employees, to Ortiz's prior EEO activity, or for non-protected personal or legitimate business reasons.

February 22, 1995. Ortiz and his attorney obtained an extension of time, allowing him until February 27 to report to begin serving the sentence.

Ortiz first contacted Ault on February 22, 1995 with an oral request for leave without pay. There is conflicting evidence as to whether the oral request specified a certain amount of leave or was for an indefinite period. In any event, Mr. Ortiz admits that he refused to give Ault a reason for why he wanted to take the leave. Ault did not approve the request. Ortiz then submitted a written request, on either the same day or the next day, for 160 hours of leave without pay. Again, he provided no reason for the request. Ault denied the written request, on the grounds that there was "no justification for said approval nor . . . any mutual benefit for the Service." Ex. 11 to Pl.'s Resp. Ortiz then filed a written request on Friday, February 24 for annual leave beginning at 7:00 a.m. the next Monday and continuing "up to amount of leave available (no. of hours to be determined by Sue per Charlie's request)."[3] *Id.* at Ex. 12. In a letter attached to his leave request, Ortiz stated only that the request was made "[b]ecause of a personal and family emergency (of a personal nature)."

Ault met with Ortiz and Victor Segura, the FWS acting personnel officer, during the afternoon of February 24. The materials submitted by Plaintiff are unclear as to what happened at the meeting, but Ault apparently confronted Ortiz with his belief that this leave request might be related to Ortiz's prison sentence and Ortiz refused to discuss the details of the matter without his attorney being present or some assurances from Ault and Segura that the information would be considered in good faith. *See id.* Ex. 23 at 2 (Letter of Lynn Starnes) and Ex. 1 at ¶ 9. Ault placed Ortiz on administrative leave for two weeks ending March 10, 1995 to decide what to do. *See id.*

---

[3] There is evidence that the parties understood this to be a request for an extended leave. Mr. Ortiz had about seven weeks of accrued annual leave, *see* Pl.'s Resp. in Opposition at 11, and the FWS personnel manual permitted additional annual leave to be advanced. *See id.* Ex. 29 at 226 FW 2.9(3) ¶ D.

Ex. 23 at 6 (Letter of Charles Ault). Plaintiff admits that he did not contact Ault, Segura or Lynn Starnes, the Acting Regional Director, during that two-week period to clarify his status or when he might be available for work. *See id.* Ex. 1 at ¶ 13 and Ex. 23 at 1 (Letter of Lynn Starnes). Instead, he contacted an EEO counselor who had assisted him previously in achieving a settlement of his "glass ceiling" discrimination claims. *See id.* Ex. 1 at ¶ 13.

Ault completed his review of the matter by March 7, 1995 and informed Ortiz that his request for leave would be denied. *See id.* Ex. 23 (Letter of Charles Ault). Ault's letter cited the need to meet critical deadlines on projects for which Ortiz was responsible as the reason for the denial. *See id.* Ortiz was incarcerated by this time, and did not return to work or contact his supervisors until May 5, 1995. *See id.* Ex. 23 at 1 (Letter of Lynn Starnes). FWS terminated Ortiz effective May 13, 1995. *See id.*

**Analysis**

Defendant's Motion for Summary Judgment requests that judgment be entered for Defendant as to all of Plaintiff's claims. Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). To withstand a motion for summary judgment, the burden is on the nonmoving party to identify specific facts in the interrogatories, affidavits, depositions and other evidence on file that would indicate a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To establish a genuine issue of material fact, the evidence must be sufficient, when viewed in the light most favorable for the nonmoving party, for a reasonable

jury to return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 238 (1986).

Title VII discrimination claims are analyzed by applying the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Plaintiff must first establish a prima facie case of discrimination. If Plaintiff can establish a prima facie case, the employer has the burden to come forward with a nondiscriminatory explanation for the action. If the employer presents such an explanation, the burden then shifts back to the Plaintiff to show that the employer's reason is mere pretext and is unworthy of belief.

**A. Prima Facie Case for Disparate Treatment Discrimination**

Plaintiff must show four elements to establish a prima facie case of discrimination based on disparate treatment: 1) that he is a member of the protected class; 2) that he suffered an adverse action by the employer; 3) that he was doing satisfactory work; and 4) that he was treated less favorably than others outside the protected class. *See Beaird v. Seagate Tech. Co.*, 145 F.3d 1159, 1165 (10th Cir. 1998); *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1469 (10th Cir. 1992). Plaintiff clearly meets the first two elements because he is of Hispanic origin and was terminated after FWS denied his requests for leave. Plaintiff also presented sufficient evidence on the third prong of the test, that he was fully qualified to request leave and to continue his employment. But Plaintiff fails to present evidence that would establish a genuine question of material fact as to the fourth element, that he was treated less favorably than others outside the protected class. Plaintiff cannot point to any evidence that similarly situated employees outside the protected class were treated differently than he was treated.

I come to the conclusion that Plaintiff has failed to present evidence of disparate treatment by first determining what employees are "similarly situated" to Plaintiff. Defendant argues that "similarly situated" means an individual who sought extended leave as a result of a prison sentence. *See* Def.'s Mem. at 7 *(Doc. 60)*. Plaintiff argues that "similarly situated" means an employee who sought 160 hours of leave, or who sought leave for personal reasons. *See* Resp. in Opp. at 12 *(Doc. 62)*. Using Plaintiff's interpretation, evidence that non-minority employees were granted leave requests for at least 160 hours, or were granted any leave for personal reasons, would be sufficient to establish disparate treatment.

I find Defendant's class of similarly situated employees to be too narrowly drawn, but I also find Plaintiff's comparisons to be inappropriate. "Comparable" employees must be similarly situated in all respects relevant to the employer's decision, but they need not be identically situated. In this case, FWS identified three factors in denying Ortiz's leave request: Ortiz's position of responsibility as a key participant in a high-priority land exchange deal, the extended length of the requested leave,[4] and Ortiz's lack of candor in refusing to provide a reason for the sudden "emergency" leave request. All of these are reasonable, legitimate factors to be considered under FWS policy in arriving at a decision of whether to grant leave. *See* Def.'s Reply, Ex. K at 226 FW 2.18 (stating that Leave Without Pay requests must state the purpose of the leave and providing a non-exclusive list of purposes for which leave without pay would be proper); *id.* at 226 FW 2.9 (supervisor may fix the

---

[4] Plaintiff's response brief points out repeatedly that Defendant incorrectly characterizes Plaintiff's request for leave as being for an indefinite period. In fact, Plaintiff requested 160 hours of leave in one of his written requests, and requested leave up to the amount of annual leave in his account in another. Plaintiff may have indicated an indefinite time period in his oral requests, *see id.* Ex. 7 at 36, but whether the requested time period was definite or indefinite is not material to this case. FWS and Ault assert that any request for an extended period of leave would be denied at that time due to the workload. *See id.* Ex. 7 at 153. Therefore, the relevant factor to the FWS decision is whether the leave was for an extended time period, not whether it was for an indefinite time period.

time at which employee takes annual leave, especially during times of peak workload). Based on these relevant factors, I conclude that a similarly situated employee would be an employee with significant project management responsibilities who requested an extended leave on short notice without providing the reason for the leave.

Plaintiff presents two types of evidence in an attempt to show disparate treatment: past FWS records that show annual leave and leave without pay being granted for more than 160 hours to certain employees, and anecdotal evidence that FWS management accommodated some employee requests for leave. The FWS records show six instances where annual leave was granted for personal reasons; none of those requests exceeded 60 hours. *See* Pl.'s Resp. in Opposition at Ex. 25. The only requests for annual leave or sick leave that were granted exceeding 100 hours were for medical reasons. *See id.* Similarly, the FWS leave without pay records show extended leave being granted for relocation, illness or injury, family medical care, military, and student trainees returning to school. Only two requests did not include reasons, and those were identified as "records not available." None of these records indicate that FWS granted extended annual leave or leave without pay to an employee in a position of responsibility such as Mr. Ortiz where the employee refused to provide a reason for the leave request.

The anecdotal evidence provides Plaintiff with no additional assistance in establishing his prima facie case. As evidence of disparate treatment, Plaintiff points to FWS Deputy Director Lynn Starnes' statement that FWS accommodates employee requests for leave. *See* Pl.'s Resp. at 13. But the context of Starnes' statement was that if Ortiz had been candid and attempted to work out a realistic solution to his problem, his request might have been accommodated. *See* Ex. 5 at 122-23. Such a statement cannot support disparate treatment. The only example cited by Plaintiff involved

a mother who was granted emergency leave because her child was in serious condition with a spleen or kidney injury suffered while playing football. *See* Ex. 5 at 48. That example is not at all comparable to Ortiz's circumstances because it involves a well-defined emergency reason for the leave and was not likely to require an extended two- to twelve-month duration. The final anecdotal evidence that Plaintiff points to is a vague assertion by Mr. Roger Abeyta that FWS accommodates non-minority leave requests. *See* Ex. 28 at ¶ 4 ("I had previously, and have since, seen the Agency management accommodate other employees when they faced emergencies by the granting of different kinds of leave and in particular, granting leave to non-minorities."). Again, Plaintiff's evidence does not show that leave was granted to similarly situated employees--employees in positions of responsibility who requested extended leave without providing a reason. Therefore, Plaintiff has not met his burden of establishing a prima facie case of disparate treatment discrimination.

### B. Prima Facie Case for Retaliation under Title VII

To establish a prima facie case for retaliation in violation of Title VII of the Civil Rights Act Ortiz must show that: 1) he engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; 2) he suffered an adverse employment action contemporaneous with or subsequent to the protected action; and 3) there is a causal connection between Ortiz's protected activity and the adverse employment action. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1381 (10th Cir. 1994) (emphasis added). Mr. Ortiz meets the first two elements, and I conclude that he presents sufficient evidence to establish a genuine issue of material fact as to the third element.

Defendant claims that there is no causal connection because Ault did not know that Ortiz had filed an EEO complaint charging discrimination. In fact, Plaintiff presents substantial evidence that

Ault knew Ortiz was transferred as settlement of some type of a complaint, and Ault knew that these types of complaints may involve claims of discrimination. There is also evidence that Ault believed Ortiz and Ortiz's supervisor, Edward Candelaria, to be trouble makers. *See id.* Ex. 14. I conclude this is sufficient evidence to establish an inference that Ault was aware of the general nature of Ortiz's prior EEO activity and thought him to be a trouble maker because of it.

### C. Evidence of Pretext

As the above analysis indicates, Plaintiff has presented sufficient evidence that could establish a prima facie case of retaliation under Title VII. Once a plaintiff has met this burden, discriminatory intent on the part of the defendant is presumed and the burden shifts to the defendant to "articulate a facially nondiscriminatory reason for the challenged employment action." *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir.1995). Defendant states that Ortiz's leave request was denied because Plaintiff was responsible for an important project and the work load did not allow an extended absence. In addition, Defendant claims that Plaintiff's lack of candor in requesting the leave, refusing to communicate with his supervisors during the period he was on administrative leave pending a decision on his request, and being absent without leave or communication from March 13 through May 5 justify his termination.

Under the *McDonnell Douglas* approach, a plaintiff has the burden to show that the facially legitimate, nondiscriminatory reasons articulated by the employer are a mere pretext for discrimination. Plaintiff attempts to show pretext in three ways: 1) by presenting substantial evidence that FWS discriminates against Hispanic employees in its promotion practices; 2) by disputing whether there were legitimate business reasons for denying leave; and 3) by claiming that Ault's denial of the leave request was irregular and *ultra vires*.

Plaintiff's evidence of discrimination against Hispanic employees in its promotion practices is irrelevant to a pretext analysis because, at best, such evidence would merely help to create an inference of discriminatory motive. In a pretext analysis, the focus is on the facially nondiscriminatory reasons offered by the employer; evidence of discriminatory motive "simply drops out of the picture." *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) (quoting *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1417-18 (10th Cir. 1993)). Further, Plaintiff fails to link the evidence of discriminatory promotion practices to the type of discrimination he alleges. In fact, the evidence offered by Plaintiff tends to disprove the link--Victor Segura's letter (Ex. 24 to Pl.'s Resp. in Opp.) complains of discriminatory promotion practices, but Mr. Segura also provides affidavit testimony (Ex. C to Def.'s Mem. in Support) that Ortiz's request was extraordinary.

On the question of whether there were legitimate business reasons for denying Ortiz's leave request, Plaintiff presents evidence that Ortiz was doing good work and that the delays encountered in the Bennett/Bartlett project from October through December 1994 were not Plaintiff's fault but due to problems in Washington. *See* Pl.'s Resp. in Opp., Ex. 21. This evidence does not respond to Defendant's asserted reasons for denying the leave request and terminating Plaintiff. Defendant does not argue that Plaintiff was terminated because he was performing poorly or that the delays were Plaintiff's fault. Instead, Defendant merely asserts that the work load was extremely heavy during February and March, Plaintiff was assigned to a position of responsibility on an important project that was being scrutinized by high-level officials in Washington, and that granting Plaintiff leave for a two- to twelve-month period, on short notice, would jeopardize the project. Plaintiff's evidence actually supports Defendant's position by showing the high-level scrutiny of the project from October through December 1994, and the FWS commitment to get the project completed in early 1995.

Finally, Plaintiff claims that evidence of *ultra vires* acts by Ault indicate that the denial of Ortiz's leave request was pretext. Plaintiff points to FWM 2.7(C) as evidence that Ault did not have authority to approve leave without pay for more than ten days, or annual leave for more than fifteen days. It is unclear whether Ault would have acted *ultra vires* if he had approved Plaintiff's request in light of FWM 2.7(B) (providing that regional and assistant directors can delegate responsibility for approval of longer requests to subordinates). It is also unclear whether Ault's *denial* of a leave request violates FWM 2.7(C). In any event, Plaintiff's own evidence indicates that Ault consulted with higher management and the Solicitor's office before making a final decision on the leave request. *See* Ex. 23; Ex. 6 at 65-66. Even if Plaintiff were to establish a technical violation of procedure by Mr. Ault, I cannot see how such an irregularity would support a finding of pretext.

## Conclusion

Plaintiff has not presented a prima facie case of disparate treatment because he has not come forward with any evidence that his leave request was treated less favorably than those of similarly situated employees outside the protected class. Neither has Plaintiff presented evidence that Defendant's reasons for denying his leave request and terminating him were mere pretext for reprisal. Plaintiff presents substantial evidence of discrimination against Hispanics in the promotion practices at FWS. But evidence of a "glass ceiling" preventing Hispanics from attaining high ranking positions in FWS Region 2 does not create a presumption that the denial of his leave request was the product of discrimination.

Wherefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment *(Doc. 59)* is **granted.** A final judgment in accordance with this opinion and FED. R. CIV. P. 58 shall be entered.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Oral Argument on the Government's Motion for Summary Judgment *(Doc. 73)* is **denied**.

DATED this 29th day of January, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:	William J. Friedman
	Santa Fe, New Mexico

Counsel for Defendant:	Ronald F. Ross
	Assistant U. S. Attorney
	U. S. Attorney's Office
	District of New Mexico
	Albuquerque, New Mexico