IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MELVIN ORTIZ<br><br>Plaintiff,<br><br>v.<br><br>GALE NORTON, SECRETARY OF THE INTERIOR, and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>Defendants. | Case No. CV-97-00738 JC/LFG |

Plaintiff, through counsel, respectfully submits his proposed findings of fact and conclusions of law in this case.

## PLAINTIFF'S PROPOSED FINDINGS OF FACTS

1. Defendants are federal entities subject to the jurisdiction of this Court.

2. Plaintiff was formerly an employee of the federal Defendants in Albuquerque, New Mexico.

3. Plaintiff is Hispanic.

4. Plaintiff is a member of a protected class.

5. Plaintiff was a realty specialist at USFWS in 1995.

6. Plaintiff, as a realty specialist, was not a manager and did not have significant project management responsibilities.

7. Plaintiff was qualified for his position.

8. Plaintiff's personnel record discloses he was proficient in the performance of his duties and assignments.

9. Plaintiff was adequately performing his duties on the Bennett-Bartlett Land Exchange at the time of his requests for leave.

10. Plaintiff was adequately performing his duties on the Inholding Prioritization projects at the time of his requests for leave.

11. Plaintiff never received negative employee performance ratings nor did he ever receive progressive warnings or discipline regarding his job performance.

12. Plaintiff filed an EEO complaint alleging national origin discrimination against his employer in 1991.

13. Plaintiff prevailed through on that EEO complaint through settlement and was promoted to GS-12, awarded back pay and accrued interest.

14. Plaintiff was re-assigned to Charles Ault's Supervision as a result of the EEO settlement.

15. Plaintiff and his then Supervisor Edward Candelaria, expressed concern at the time of settlement that the placement under Charles Ault was to effectuate a retaliatory scheme against Plaintiff and that Charles Ault intended to assign him to projects for which he was not qualified.

16. Plaintiff's employee ratings declined after he was placed under Charles Ault's supervision.

17. Plaintiff was a credible witness.

18. Edward Candelaria was Plaintiff's former supervisor, and the former Chief of Realty Management Branch for USFWS Region 2.

19. Edward Candelaria was a successful EEO claimant.

20. Edward Candelaria was a credible witness.

21. Edward Candelaria had personal knowledge of the projects to which Plaintiff was assigned and testified Plaintiff was not the source of any delay in the project.

22. Edward Candelaria testified Charles Ault had a discriminatory and retaliatory bias against Plaintiff.

23. Plaintiff's association with Edward Candelaria who was a vocal critic of discriminatory practices by Defendants herein, caused reprisals.

24. Roger Abeyta is a former Assistant Regional Director for Human Resources in USFWS Region 2.

25. Roger Abeyta is Hispanic.

26. Roger Abeyta had direct professional involvement in Plaintiff's leave requests in February 1985.

27. Roger Abeyta believed Plaintiff was a valuable employee.

28. Roger Abeyta recommended Plaintiff's leave requests be approved in February 1995.

29. Roger Abeyta testified that Charles Ault was personally aware of Plaintiff's conviction and his need for leave to serve a brief period of incarceration.

30. Roger Abeyta testified that Charles Ault knew about Plaintiff's prior successful EEO activity and knew the underlying complaint was for discrimination. He also testified Victor Segura and Supervisor Starnes were involved in its disposition.

31. Roger Abeyta testified that Charles Ault, Victor Segura, and Supervisor Starnes knew about Edward Candelaria's prior successful EEO activity and knew the underlying complaint was for discrimination.

32. Roger Abeyta was aware of Plaintiff's intention to qualify for work release to return to work in approximately 60 days and discussed it with Supervisor Starnes and EEO Counselor Armijo.

33. Roger Abeyta testified he was personally aware of the agency accommodating other non-minority employee's leave in emergency situations like Plaintiff's.

34. Roger Abeyta testified the agency's denial of Plaintiff's request to use his annual leave was irrational and contradictory because the agency granted him two weeks of administrative leave and cost the government money instead.

35. Roger Abeyta testified Charles Ault and other management employees denied Plaintiff's emergency leave requests as a pretext in order to make him AWOL so they could terminate him.

36. Roger Abeyta was a credible witness.

37. Thomas Baca is currently a manager at USFWS Region 2 and is the former Chief of Planning.

38. Thomas Baca is Hispanic.

39. Thomas Baca testified Charles Ault told him Plaintiff and Edward Candelaria were troublemakers and that Ault would get rid of Plaintiff if he ever got the chance.

40. Thomas Baca testified understood Charles Ault to be referring to Plaintiff's prior EEO activity and Ault was telling him to intimidate him, as a Hispanic male, from complaining about discrimination in the workplace.

41. Thomas Baca testified Charles Ault seized on Plaintiff's emergency situation to manufacture a reason to terminate him and that the supposed heavy workload issue was nothing more than a pretext.

42. Thomas Baca testified that he had never heard of a denial for annual leave based on a

~WASH1:4132769.v1
309411-1

supposed workload issue.

43. Thomas Baca believed Plaintiff was highly qualified and that his termination hurt the Service.

44. Thomas Baca testified the "glass ceiling" in USFWS Region 2 that was identified in an internal report was maintained not only by outright refusals to promote, but by lesser measures designed to foreclose promotion opportunities, such as denying leave requests like was done to Plaintiff.

45. Thomas Baca testified of his experience in real estate matters and that the realty portion of the Bennett-Bartlett Land Exchange was largely, if not completely, finished at the time of Plaintiff's leave requests.

46. Thomas Baca was a credible witness.

47. Alvaro Fragosa is a real estate agent in Arizona and represented the non-government party in the Bennett-Bartlett Land Exchange.

48. Alvaro Fragosa found Melvin Ortiz' work on the project timely and complete.

49. Alvaro Fragosa placed an inquiry to Washington to his Congressman about delays in completing the Exchange.

50. Alvaro Fragosa received a letter from Arizona Congressman Kolbe that the delay was caused by matters involving Washington D.C. He was never told the problems arose from USFWS Region 2.

51. Alvaro Fragosa was a credible witness.

### THE LEAVE REQUESTS IN FEBRUARY 1985

52. In February 1995 Plaintiff had to begin a brief period of incarceration for an incident not involving his employment.

53. Plaintiff was eligible for work release after completing approximately 60 days of his sentence.

54. Plaintiff requested leave without pay to serve 60 days of his sentence, and to become eligible for work release.

55. Plaintiff sought leave without pay for a fixed period of time, the length of which he disclosed to Charles Ault and others at the time of the request.

56. The fixed period requested coincided with the time he would have to be incarcerated before he could begin work release.

57. After Charles Ault's denial, Plaintiff then sought to use his accrued annual leave time for the period before he could begin work release and was again denied by Charles

4

Ault.

58. Plaintiff's personal emergency precluded his requesting or scheduling leave in advance of when he requested it.

59. Plaintiff followed the agency rules regarding emergency leave requests.

60. Plaintiff could not change or alter the timing of his emergency leave request.

61. Plaintiff took the necessary steps to become eligible for work release while incarcerated.

62. Plaintiff informed USFWS EEO counsel John Armijo of his efforts to get work release and expected availability to return to work.

63. Roger Abeyta, former Assistant Regional Director for Human Resources, informed USFWS management of Plaintiff's expected availability to return to work on work release after approximately 60 days.

64. In February 1995 at the time of Plaintiff's aforecited requests, Plaintiff's criminal conviction was generally known to all agency management involved in his leave requests.

65. Had either leave request been granted, Plaintiff would have returned to work without any negative impact on the projects to which he was assigned.

66. Had either leave request been granted, Plaintiff's absence would not have not compromised the Service's execution of its duties.

67. Similarly situated non-protected employees were treated more favorably than the plaintiff regarding annual leave and leave without pay requests to address personal or family emergencies.

68. The government witnesses' testimony regarding the handling of Plaintiff's leave requests contained glaring inconsistencies.

69. The timing of management's claim that the projects Plaintiff was working on were suddenly collapsing or would be unduly delayed by his absence supports an inference of discrimination and retaliation .

70. Charles Ault lied to his supervisor Lynn Starnes regarding the specific content of Plaintiff's leave requests.

71. Charles Ault's withholding of material information from his supervisor Lynn Starnes regarding Plaintiff's leave request, and her unquestioning willingness to accept his statements without further inquiry gave effect to Charles Ault's retaliatory and discriminatory animus.

~WASH1:4132769.v1
309411-1

72. Charles Ault's personal and subjective criteria regarding the "benefit to the service" analysis he used to evaluate Plaintiff's annual leave request were used to disguise discriminatory and retaliatory animus.

73. Charles Ault's personal criteria regarding the "benefit to the service" analysis he used to evaluate Plaintiff's leave requests were wholly subjective and unarticulated and were used to disguise discriminatory and retaliatory animus.

74. Charles Ault's withholding of information from his superior Lynn Starnes, meant his statements to her were materially false, and knowingly made.

75. Charles Ault's testimony that Plaintiff did not provide a leave request form with a fixed period of time was an incredible or knowingly false reason for denying the requests and Ault was motivated by a discriminatory and retaliatory animus.

76. The government witnesses contradicted each other regarding the information they received from Charles Ault at the time of the denial of leave requests.

77. The agency defendants failed to demonstrate it would have made the same adverse decision, but for Charles Ault's withholding of information.

78. The agency defendants knew Plaintiff was a member of a protected class.

79. Supervisor Starnes did not ask to see the documentation submitted by Plaintiff regarding his leave requests and instead relied only on what she was told by Charles Ault.

80. Supervisor Starnes admitted the agency could have resolved the impact on Plaintiff's projects at the time his leave requests were denied.

81. Supervisor Starnes admitted other employees were accommodated who had leave requests similar to Plaintiff's.

82. Supervisor Starnes' claim that she was not told Plaintiff was eligible for work release was rebutted by other agency witnesses.

83. Supervisor Starnes did not learn Plaintiff requested a fixed period of time in his leave request until after Plaintiff was terminated.

84. Victor Segura did not help draft the leave denial letter signed by Charles Ault.

85. Plaintiff submitted statistical evidence that employees with personal emergencies similarly situated to the Plaintiff other than race or prior protected speech conduct, received systematically better treatment regarding the requests for leave.

## OTHER EVIDENCE OF DISCRIMINATION

86. A glass ceiling existed in USFWS Region 2 for Hispanic men at the time of the leave

6

requests and was the subject of an explicit finding in a Department of Interior Report introduced by Plaintiff and a reasonable inference is the same bias animated the decisions challenge in this case.

87. All agency witnesses admitted knowledge of the "glass ceiling" Report and its findings, and the government's only Hispanic witness from the agency admitted he agreed with the findings in the Report.

88. Supervisor Starnes, a Caucasian, referred to the Report as "garbage."

89. Hiring and firing authority for GS-13's and above was removed from Region 2 because of the systematic discrimination against Hispanic men detailed in the Report.

90. Charles Ault believed Plaintiff was a troublemaker because of his successful EEO activity.

91. Charles Ault believed Edward Candelaria was a troublemaker because of his successful EEO activity and Ault retaliated against Plaintiff for his association with Edward Candelaria.

92. Charles Ault had a personal agenda, and to lay in wait, to seize any opportunity that might provide a pretext to terminate those he considered to be troublemakers, like Plaintiff and Edward Candelaria.

93. Charles Ault generally made his views known to other employee members of the same protected class that he would seize any pretext to terminate those he considered to be troublemakers, in order to intimidate those other protected class members from raising concerns about discrimination and retaliation.

94. Victor Segura, admitted the glass ceiling finding was "public knowledge."

95. Victor Segura, believed the findings of systematic discrimination in USFWS Region 2 were accurate.

96. The proper chain of command for presenting claims of discrimination is to present them to the agency's EEO counselors.

97. Victor Segura testified he was retaliated against by agency Defendants for his having signed a letter complaining of discrimination at the agency around the same time Plaintiff was seeking emergency leave.

98. Victor Segura testified he saw discrimination against Hispanic men during the time of this incident, and from 1991 – 1996.

99. Victor Segura advised Charles Ault prior to his denial of the second leave request regarding the rules on employee leave requests.

7

100. Victor Segura advised Charles Ault that he believed incarceration was a personal emergency under the agency's rules.

101. Victor Segura did not help draft the leave denial letter signed by Charles Ault.

102. Plaintiff, after his supervisor denied his leave requests, filed complaints and communicated with his designatec EEO counselor, John Armijo.

103. Plaintiff's replacement was from outside the same protected class as Plaintiff.

104. Plaintiff's job was not eliminated.

105. Plaintiff's project responsibilities were taken over by a Caucasian attorney, Douglas St. Pierre.

106. Plaintiff suffered damages as a result of defendant's retaliatory and discriminatory actions, including wrongful termination, lost back pay and related benefits, front pay and benefits, and emotional pain and suffering.

107. Plaintiff's damages entitle him to equitable relief and damages in the amount of $100,000.

### THE PROJECTS PLAINTIFF WORKED ON WERE NOT HARMED BY HIS ABSENCE AND CLAIMS TO THE CONTRARY BY AGENCY OFFICIALS WERE PRETEXTUAL

108. The Bennett-Bartlett Land Exchange was not a major project for USFWS Region 2, in terms of value or size of exchange.

109. Defendants' claim that the projects assigned to Plaintiff would be unduly delayed if Plaintiff's annual leave and leave without pay requests were granted, was pretextual and false and were made to cover up discriminatory and retaliatory misconduct.

110. No contemporaneous agency record supports the claim that denial of Plaintiff's leave requests was based on a workload crisis on the projects to which Plaintiff was assigned.

111. Defendants' claim that substantial realty-related-work remained to be done on the Bennett-Bartlett Land Exchange was pretextual and false.

112. Defendants' claim that realty-related-work remained to be done on the Inholding Prioritization project that could only be done by Plaintiff was pretextual and false.

113. Agency documents established the delay was caused by a biological contaminants survey and not realty-related work.

114. Plaintiff's coworkers testified the project was delayed by a biological contaminants survey she was doing and that the realty part of the work was done by Plaintiff and was completely adequate for her purposes.'s part of the work was completed in February

1995.

115. Plaintiff's coworkers testified the Inholding Prioritization project was ongoing at the time of Plaintiff's leave requests and was not delayed by Plaintiff's absence.

116. The agency failed to demonstrate the delays with the Bennett-Bartlett Land Exchange or the Inholding Prioritization matter were anything but routine or minor delays.

## **PROPOSED CONCLUSIONS OF LAW**

1. Plaintiff established a *prima facie* case of discrimination, and retaliation under Title VII. *Ortiz v. Norton*, 254 F3d 889 (10th Cir. 2001).

2. Plaintiff established a *prima facie* case that his immediate supervisor's actions were *ultra vires*. *Ortiz v. Norton*, 254 F3d 889 (10th Cir. 2001)

3. The government waived any right to argue the fact or nature of Plaintiff's state Court conviction as an impediment to his Title VII claim. *Ortiz v. Norton*, 254 F3d 889, n.4 (10th Cir. 2001)

4. Federal law bars a federal agency from granting or denying a request to use accrued annual leave based on the purpose for which an employee seeks to use his leave.

5. Plaintiff suffered intentional discrimination and retaliation in the handling of his leave requests and his termination for being AWOL.

6. Charles Ault's denial of Plaintiff's request for annual leave of 160 hours was *ultra vires*.

7. Charles Ault acted with retaliatory animus when evaluating Plaintiff's leave requests.

8. Charles Ault acted with discriminatory animus when evaluating Plaintiff's leave requests.

9. The negative leave decisions in this case constitute agency decisions adversely affecting a term, condition, or privilege of employment.

10. Defendant agency failed to articulate a legitimate, nondiscriminatory, non retaliatory reason for denying Plaintiff's leave requests.

11. Lynn Starnes, the ultimate decisionmaker, followed Charles Ault's biased recommendation without independently investigating the facts surrounding Plaintiff's emergency leave request thus rendering the decision *ultra vires* and the result of discrimination and retaliation.

12. The defendant agency intentionally discriminated against Plaintiff through its

~WASH1:4132769.v1
309411-1

employees and agents.

13. The defendant agency's proffered reasons for its actions were pretextual, unbelievable and were designed to cover retaliatory and discriminatory animus.

14. The defendant agency failed to show its finding of AWOL was preceded by a legitimate denial of a request for annual leave.

15. The defendant agency failed to follow its own rules regarding "emergency" leave requests.

16. The defendant agency's personnel rules require accommodation of employees with emergencies.

17. Discrimination and retaliation were the motivating factors in denying Plaintiff's leave requests and the denial was for the purpose of manufacturing the predicate AWOL finding necessary for termination.

18. The defendant agency would not have reached the same decision regarding Plaintiff's leave requests or its finding that Plaintiff was AWOL in the absence of the impermissible discriminatory and retaliatory animus.

19. Plaintiff suffered damages as a result of defendant's retaliatory and discriminatory actions, including wrongful termination, lost back pay and related benefits, front pay and benefits, and emotional pain and suffering.

20. Plaintiff's damages entitle him to equitable relief and damages in the amount of $100,000.

Respectfully submitted,

_____
William J. Friedman
Piper Rudnick LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
Telephone: 202-861-3474
Fax: 202-223-2085
e-mail: william.friedman@piperrudnick.com

and

10

                                                                           /s/
_____
Philip B. Davis, Esq.
814 Marquette Avenue, N.W.
Albuquerque, New Mexico 87102
505-242-1904

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MELVIN ORTIZ<br><br>            Plaintiff,<br>Vs.<br><br>GALE NORTON, SECRETARY OF THE INTERIOR, and UNITED STATES FISH AND WILDLIFE SERVICE,<br>           Defendants. | Case No. CV-97-00738 JC/LFG |

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing Plaintiff's Proposed Findings of Fact and Conclusions of Law were filed electronically with the Court this 23rd day of January, 2004, and faxed and mailed to opposing counsel below of record this 23rd day of January, 2004.

Michael H. Hoses, Esq.
Office of the United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103-0607


_____
William J. Friedman
Piper Rudnick LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
Telephone: 202-861-3474
Fax: 202-223-2085
e-mail:  william.friedman@piperrudnick.com