# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MELVIN R. ORTIZ,

      Plaintiff,

v.                                  No. CIV 97-738 JC/LFG

GALE A. NORTON, Secretary of the Interior,

      Defendant.

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

      COMES NOW Defendant, Gail Norton, the Secretary of the Interior, by and through her undersigned attorneys, and proposes the following Findings of Facts and Conclusions of Law.

## PROPOSED FINDINGS OF FACT

      1.  In 1995, Plaintiff was employed as a Realty Specialist, GS-1170-12, Division of Realty, for the Department of the Interior's Fish and Wildlife Service (FWS), Region 2.

      2.  In 1995, Plaintiff's immediate supervisor was Charles Ault, Chief, Land Acquisition Planning, Division of Realty.

      3.  In 1991, Plaintiff filed an Equal Employment Opportunity (EEO) complaint against the FWS, alleging discrimination.

      4.  In early November 1993, the Plaintiff and the FWS entered into an Informal No Fault Resolution Agreement (Agreement) settling Plaintiff's EEO complaint.

      5.  The Agreement provided that Plaintiff would be promoted to a GS-12 position.

      6.  Plaintiff voluntarily signed the Agreement.

7.  In December 1993, Plaintiff was placed under Charles Ault's supervision in a GS-12 position in the Land Acquisition Planning Division of Realty.

8.  On August 20, 1993, Plaintiff was convicted by a jury of two counts of Aggravated Battery (Deadly Weapon/Great Bodily Harm) (Firearm Enhancement), felony offenses occurring on or about October 24, 1992.

9.  On November 3, 1993, Plaintiff was sentenced to the custody of the New Mexico Department of Corrections for a term of four (4) years, of which three (3) years were suspended, for an actual sentence of one year.

10.  In December 1, 1993, Plaintiff appealed his criminal conviction to the Court of Appeals for the State of New Mexico.

11.  On December 30, 1994, the Court of Appeals for the State of New Mexico issued a Memorandum Opinion and Order affirming Plaintiff's criminal conviction.

12.  On February 22, 1995, the Second Judicial District Court for the State of New Mexico, issued a stipulated Order, which was signed by Plaintiff's counsel and the Assistant District Attorney, ordering Plaintiff to turn himself in on February 27, 1995 to the Western New Mexico Correctional Facility to begin serving his sentence.

13.  On February 22, 1995, Plaintiff orally requested Leave Without Pay ("LWOP") for an unspecified period of time for an unspecified reason from his supervisor, Charles Ault.

14.  The Personnel Regulations for the FWS, Part 226, Attendance and Leave/FPM 600, specifically require that a request for LWOP must be in writing and must specifically state the period covered by the requested absence and must fully outline the purpose for the request.

15.   Charles Ault denied the oral request for LWOP.

16.   On February 22, 1995, Plaintiff submitted a written request, SF 71, for 160 hours of LWOP commencing on March 6 and ending March 31, 1995, but not stating the reason for the LWOP.

17.   On February 22, 1995, Plaintiff did not inform Mr. Ault that he was going to begin serving a prison sentence on February 27, 1995.

18.   Under the FWS Personnel Regulations, Charles Ault lacked authority to grant Plaintiff's request for 160 hours of LWOP.  An immediate supervisor can only grant a LWOP request for 80 hours, or 10 days.

19.   On February 22, 1995, Charles Ault notified Plaintiff in writing that Ault could not approve the request for 160 hours of LWOP from March 6, 1995 to March 31, 1995. He found no justification for the request and no benefit for the FWS.

20.   On February 24, 1995, Plaintiff submitted a written SF 71, Application for Leave to Charles Ault, requesting annual leave commencing on February 27, 1995 "up to the amount of annual leave available."

21.   As of February 24, 1995, Plaintiff's Annual Leave Balance was 260 hours of leave or 32.5 work days.

22.   Also on February 24, 1995, Plainitff provided Charles Ault with a letter, stating that "because of a personal and family emergency (of a personal nature), I am forced to request annual leave effective February 27, 1995 . . . I plan to return to work before my leave is exhausted."

23.   Charles Ault informed Plaintiff in writing that the leave request was refused pending further analysis of the situation by Region 2 of the FWS and the Solicitor's

3

Office.

24.   Had Plaintiff's request to use the balance of his annual leave been requested, his annual leave would have been exhausted no later than April 14, 1995. Plaintiff would have continued to accrue 8 hours per pay period during the time that he would have been on annual leave from February 27, 1995.

25. On February 24, 1995, at approximately 2:00 p.m., Charles Ault and Victor Segura, Acting Personnel Director, FW, Region 2, met with the Plaintiff.

26.   The meeting lasted for a short period of time.

27.   During the meeting Charles Ault and Victor Segura informed Plaintiff that the Solicitor's office had told them that the Plaintiff's conviction had been affirmed and that he was to report to Grants, New Mexico to begin serving his sentence.

28.   During the meeting Plaintiff did not confirm or deny the information that Charles Ault and Victor Segura had received from the Solicitor's Office.

29.   During the meeting, Plaintiff did not tell Charles Ault and Victor Segura that he had been ordered to report the Western New Mexico Correctional Facility on February 27, 1995.

30.   During the meeting, Plaintiff did not tell Charles Ault and Victor Segura that he would be eligible for work release after serving sixty (60) days of his sentence.

31.   At the conclusion of the meeting, Charles Ault and Victor Segura told Plaintiff that he was being placed on paid Administrative Leave commencing February 27, 1995, and requested that Plaintiff turn in to them his ID., Government credit card and keys before leaving that day.

32.   Plaintiff stated that he needed to confer with his attorney before complying

4

with their request.

33.   Charles Ault denied Plaintiff's Application for Leave dated February 24, 1995, for an unspecified amount of annual leave ("up to the amount of leave available"), based on the impact on the FWS.

34.   Charles Ault never saw or heard directly from Plaintiff again prior to Plaintiff's termination in May, 1995.

35.   At some point in time on February 23, 1995, Plaintiff sought pre complaint counseling from John Armijo, the EEO counselor at FWS, Region 2.

36.   On February 27, 1995, Plaintiff reported to the Western New Mexico Correctional Facility in Grants, New Mexico.

37.   On March 8, 1995 Plaintiff was transferred to the State of New Mexico's Correctional Facility at Los Lunas and was housed at the correctional "minimum restricted unit" ("CMRU") until April 11, 1995.

38.   In accordance with the State of New Mexico Corrections Department Regulations, Plaintiff was ineligible to apply for work release while he was housed in CMRU.

39.   Pursuant to the State of New Mexico Corrections Department Regulations, CD-100300, to qualify for work release Plaintiff needed to satisfy, among others, the following conditions: 1) be classified as "minimum custody"; 2) shall be within 8 months of release, including good conduct; and, 3) have been in residence at a minimum-security facility in MRU for a minimum of 60 days.

40.   On April 11, 1995, Plaintiff was transferred to the correctional minimum unit ("CMU").

41.  Plaintiff was credited with "good time" on May 19, 1995, resulting in his discharge date being moved to February 21, 1996.

42.  At no time prior to his termination was Plaintiff eligible for work release.

43.  Plaintiff never applied for work release from the State of New Mexico Corrections Department.

44.  Plaintiff's prior written statement to Charles Ault on February 24, 1995, containing the assertion that "[he] plan[s] to return to work before my leave is exhausted" was an impossibility given his sentence and ineligibility for work release prior to mid April when his annual leave would have exhausted.

45.  On March 7, 1995, Charles Ault sent a letter to Plaintiff by certified mail reiterating to Plaintiff that on February 24, 1995, he had been placed on  administrative leave with full pay and benefits ending on March 10, 1995.  Mr. Ault stated that he had reviewed Plaintiff's work assignments and determined that there was significant work to be accomplished in order to fulfill the Service's obligations to meet critical deadlines. Mr. Ault informed Plaintiff that he was denying Plaintiff's request for annual leave and notified him that he was expected to report for work on March 13, 1995.  If Plaintiff failed to report for work as scheduled, he would be placed on Away Without Authorized Leave (AWOL) status.

46.  The FWS received no response from Plaintiff to Charles Ault's March 7, 1995 letter.

47.  On March 24, 1995, Charles Ault again wrote to Plaintiff by certified mail stating that Ault had not heard from Plaintiff (verbal nor written) since the meeting on February 24, 1995.  Mr. Ault stated that Plaintiff had not provided Ault with any

6

information about Plaintiff's absence from his scheduled duties.  Ault informed Plaintiff

that his failure to report as assigned had resulted in Plaintiff being  LWOP for 40 hours

of official duty from March 13, through March 17, 1996.

48.  The FWS received no response from Plaintiff to the March 24, 1995 letter.

49.  Again, on March 31, 1995, Charles Ault sent a letter by certified mail to

Plaintiff reminding Plaintiff that, as a result of his failure to report for scheduled work and

assigned duties, he was placed on AWOL status and, as of close of business March 31,

1996, he Plaintiff had been on AWOL on March 13, 14, 15, 16, 17, 21, 22, 23, 24, 27,

28, 29, 30 and 31, 1995, totaling 125 hours.  Mr. Ault specifically requested that Plaintiff

return to the office immediately or not later than April 14, 1995, that he surrender any

keys, credit card, U. S. Department of Interior identification card, and/or other materials

or equipment issued to him.

50.  Plaintiff did not respond either orally or in writing to the March 31, 1995 letter

from Charles Ault.

51.  On April 3, 1995, by certified mail, the Regional Realty Supervisor, Larry C.

Coe, notified Plaintiff of a proposed adverse action issued in accordance with Part 752

of the Office of Personnel Management regulations.  The proposed action was the

removal of Plaintiff from the FWS at any time after thirty (30) fully calendar days from

the date of receipt of the notice.

52.  The proposed removal was based on the following:  absent from duty without

authorization, specifically on March 13, 1995, March 14, 1995, March 15, 1995, March

16, 1995, March 17, 1995, March 21, 1995, March 22, 1995, March 23, 1995, March 24,

1995, March 27, 1995, March 28, 1995, March 29, 1995, March 30, 1995, and, March

7

31, 1995.

53.  In the April 3, 1995, proposed removal letter, Plaintiff was notified that he had the right to ask for further explanation, the right to answer both personally and in writing and to furnish affidavits and evidence in support of his response, the right to plead extenuating circumstances.  Plaintiff was informed that any oral reply would be conducted by Mr. Joe Mazzoni, Assistant Regional Director, Refuges and Wildlife, Region 2.  In the letter, Plaintiff was advised that if he believed that personal, medical or other problems were the reasons for his actions, he could provide documentation of a medical condition or raise these problems in the written and/or oral reply. Plaintiff was specifically told that the response, whether written or oral, must be received within fifteen (15) calendar days from the date the letter was received.

54.  A certified receipt indicates that the April 3, 1995 proposed removal letter was signed for by Cathy Ortiz on April 6, 1995.

55.  On May 5, 1995, Plaintiff responded in writing to the Regional Director, FWS. Plaintiff stated that he received the proposed removal letter on April 16, 1995.  Plaintiff stated that he had a personal tragedy, but did not explain what the tragedy was or, for that matter, where he was.  He gives his address as 518 El Dorado Dr. NW, despite the fact that he was incarcerated at the Los Lunas Correctional facility on that date.  He requested a reasonable amount of LWOP and, if necessary, annual leave.

56.  On May 11, 1995, the FWS issued its decision letter upholding the proposed removal.  Lynn Starnes, FWS, Region 2, Acting Regional Director issued the removal letter.  In the May 11, 1995 letter, Ms. Starnes stated she had reviewed the statements contained in Plaintiff's May 5, 1995 response and found that the information provided in

8

that letter did not provide any additional information to change the original proposed action against him.  She further stated that Plaintiff did not specify why he wanted the leave other than to state that he had a personal tragedy.  She sustained the finding that Plaintiff was AWOL for a significant period of time, and found it unacceptable that Plaintiff made no attempt to contact his supervisor after February 24, 1995, or the regional office to provide additional supporting information or documentation.

57.  In the May 11, 1995, decision letter, Ms. Starnes notified Plaintiff that, in reaching her decision, she had considered his satisfactory work record and had considered his length of service; however because Plaintiff had not clarified his current status and the FWS could not depend on him to return to work, Ms. Starnes terminated Plaintiff's employment with the Service.

58.  On or about May 9, 1995, Plaintiff signed a Complaint of Discrimination alleging discrimination on the basis of race (white), national origin and reprisal when his requests for leave were denied.

59.  On August 25, 1995, Plaintiff was notified by certified mail, return receipt requested, that his complaint had been received by the U. S. Department of Interior Human Resources in Washington, D.C. and that the following allegations were accepted:

>1.  On February 23, 1995, your first-line supervisor denied your request for LWOP for an undetermined amount of time; and,

>2.  On February 24, 1995, your first-line supervisor denied your request to use the balance of your annual leave.

Plaintiff received the letter on September 1, 1995.

60.  On September 5, 1995, Plaintiff wrote to the U. S. Department of Interior,

9

Human Resources, Washington, D.C., informing them that allegation number 1 was incorrect because he had, in fact, asked for four weeks with LWOP, and he requested that allegation Number 1 be corrected.

61.  On September 26, 1995, Plaintiff was released from prison.

62.  On November 3, 1995, Plaintiff filed a second EEO complaint alleging discrimination on the basis of race (white), national origin, and reprisal, when he was terminated on May 11, 1995.

63.  On April 22, 1997, the Department of Interior issued a Final Agency Decision on Plaintiff's EEO complaints finding no discrimination and no retaliation.

64.  On May 27, 1997, Plaintiff filed the above-captioned judicial complaint.

65.  Between September 27, 1995, until the present, Plaintiff has not sought other employment.

66.  Other than the EEO complaints filed in 1995 by Plaintiff, no EEO complaints have been made regarding Charles Ault.

## PROPOSED CONCLUSIONS OF LAW

1.  Defendant did not discriminate against Plaintiff on the basis of national origin when Plaintiff's written request for LWOP dated March 22, 1995 (sic) was denied by Charles Ault.

2.  Defendant did not retaliate against Plaintiff for prior EEO activity when his written request for LWOP dated March 22, 1995 (sic) was denied by Charles Ault.

3.  Defendant did not discriminate against Plaintiff on the basis of national origin when Plaintiff's Application for Annual Leave dated February 24, 1995 was denied by Charles Ault.

4.   Defendant did not retaliate against Plaintiff for prior EEO activity when his written request for Annual Leave dated February 24, 1995 was denied by Charles Ault.

5.   Defendant did not discriminate against Plaintiff on the basis of national origin when Plaintiff was terminated from the FWS on May 11, 1995.

6.   Defendant did not retaliate against Plaintiff for prior EEO activity when Plaintiff was terminated from the FWS on May 11, 1995.

7.    Plaintiff has failed to prove that Defendant's action was intentionally retaliatory; i.e., a retaliatory motive playing a part in the adverse employment action. Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 122 (2d Cir. 1996).  ("A plaintiff asserting a retaliation claim 'has the ultimate burden of persuasion to demonstrate that the challenged employment decision was the result of intentional retaliation.'") (citation omitted), cert. denied, 520 U.S. 1274 (1997).

8.   Charles Ault exercised legitimate business judgment in dealing with his employees and evaluating the work load of the subordinate employees.

9.   Charles Ault's explanations for his denial of Plaintiff's leave requests were not pretextual.

10.   Charles Ault held a good faith belief in his reasons for denying Plaintiff's leave requests.

11.   The pertinent question in determining pretext is not whether Charles Ault was right to think that Plaintiff's work needed to be completed in a timely fashion and therefore, Plaintiff's presence in the Realty Division was necessary, but whether that belief was genuine or pretextual." *Pastran*, 210 F.3d 1206; *Kendrick*, 220 F.3d 1220, 1231 (10th Cir. 2000) (challenge of pretext requires an examination of the facts as they

appear to the person making the decision); *Shorter v. ICG Holdings, Inc.*, 188 F.3d

1204, 1209 (10th Cir. 1999) (it is the manager's perception of the employee's

performance, and not the employee's subjective evaluation of her performance, that is

relevant in determining pretext).

12.  Plaintiff failed to mitigate any alleged damages with respect to back pay and

front pay.

13.  Lynn Starnes articulated legitimate business reasons for terminating Plaintiff

and her reasons were neither discriminatory nor retaliatory.


Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

***Electronically filed 1/26/04***
JAN ELIZABETH MITCHELL
MICHAEL H. HOSES
Assistant U. S. Attorneys
P.O. Box 607
Albuquerque, NM  87103
(505) 346-7274

I HEREBY CERTIFY that a true copy of the
foregoing pleading was mailed to opposing
counsel of record this 26th day of January, 2004.

*/s/ MICHAEL H. HOSES*
MICHAEL H. HOSES
Assistant U. S. Attorney


N:\MHoses\ortiz,melvin\proposed findings of fact and conclusions of law.wpd