IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MELVIN R. ORTIZ,

    Plaintiff,

vs.                                               No. CIV-97-00738 JC/LFG

GALE A. NORTON, Secretary of the Interior,
and UNITED STATES FISH AND WILDLIFE
SERVICE,

    Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

       THIS MATTER came on for a bench trial commencing on May 18, 2004 and concluding on May 19, 2004. Having reviewed the proposed findings and conclusions submitted by each party, and considered all the evidence presented at trial, the Court makes the following Findings of Fact and Conclusions of Law and hereby enters judgment against Plaintiff and in favor of Defendants.

FINDINGS OF FACT

1.     Defendants are federal entities subject to the jurisdiction of the Court.

2.     In 1995, Plaintiff was employed as a Realty Specialist, GS-1170-12, Division of Realty, for the Department of the Interior's Fish and Wildlife Service ("FWS"), Region 2, Albuquerque, New Mexico.

3.     In 1995, Plaintiff's immediate supervisor was Charles Ault, Chief of Land Acquisition Planning within the Division of Realty.

4.     Plaintiff is Hispanic.

5. In 1991, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against his employer alleging national origin discrimination.

6. In November 1993, Plaintiff and FWS voluntarily entered into an informal No Fault Resolution Agreement ("Agreement") resolving Plaintiff's EEO complaint.

7. The agreement provided, in pertinent part, that Plaintiff would be promoted to a GS-12 position.

8. In December 1993, Plaintiff was placed in a GS-12 position within the Land Acquisition Planning Division of Realty.

9. Plaintiff's 1993 promotion to his new position also represented a re-assignment from the supervision of Edward Candelaria to that of Charles Ault.

10. No GS-12 position was available under the supervision of Edward Candelaria at the time of Plaintiff's promotion to GS-12.

11. Plaintiff's job performance evaluations became less favorable under the supervision of Mr. Ault than they had been under the supervision of Mr. Candelaria.

12. On November 3, 1993, Plaintiff was sentenced to the custody of the New Mexico Department of Corrections for a term of four (4) years of which three (3) years were suspended, resulting in a term of one (1) year of incarceration.

13. On December 1, 1993, Plaintiff, through his attorney Joseph Riggs, appealed his conviction to the New Mexico Court of Appeals.

14. On December 30, 1994, the Court of Appeals for the State of New Mexico issued its Memorandum Opinion and Order ("Opinion") affirming Plaintiff's criminal conviction.

15. In early January 1995, Joseph Riggs mailed his client, Plaintiff, a copy of the Opinion and left

a telephone message for Plaintiff requesting a return call.

16. Plaintiff did not contact Mr. Riggs in early January.

17. On February 22, 1995, the Second Judicial District Court for the State of New Mexico issued a stipulated Order, signed by Mr. Riggs and the Assistant District Attorney, ordering Plaintiff to turn himself in on February 27, 1995 to the Western New Mexico Correctional Facility to begin serving his prison sentence.

18. On February 22, 1995, Plaintiff made an oral request to Mr. Ault for Leave Without Pay ("LWOP") for an unspecified period of time and for an unspecified reason.

19. The FWS Personnel Regulations require that all requests for LWOP pay be in writing, state the time period covered by the request, and outline the purpose of the request.

20. Mr. Ault denied Plaintiff's oral request for LWOP.

21. On February 22, 1995, Plaintiff submitted a written request for one hundred sixty (160) hours of LWOP to begin on March 6 and end on March 31, but Plaintiff's request was defective in that it failed to include a reason for the request.

22. Mr. Ault received second-hand information indicating that Plaintiff would be required to serve a prison term, but Plaintiff himself never provided Mr. Ault with that information.

23. Under FWS Personnel regulations, Mr. Ault lacked authority to grant Plaintiff's first written request for LWOP because the time requested exceeded 80 hours.

24. On February 22, 1995, Mr. Ault denied Plaintiff's first written request for leave.

25. On February 24, 2004, Plaintiff submitted a second written request for leave, accompanied by a letter which stated, "because of a family emergency (of a personal nature), I am forced to request annual leave effective February 27, 1995...I plan to return to work before my

annual leave is exhausted."

26. Mr. Ault denied Plaintiff's second written request for leave, indicating that Plaintiff's situation would be reviewed by the Solicitor's Office.

27. In a meeting on February 24, 1995, Charles Ault and Victor Segura confronted Plaintiff with their awareness of his lost appeal and pending prison sentence scheduled to commence on February 27, but Plaintiff refused to confirm, or even discuss, that information.

28. During the February 24, 1995 meeting with Mr. Ault and Mr. Segura, Plaintiff did not communicate his belief that he would be eligible for work release within 60 days of reporting to prison.

29. At the close of the February 24 meeting, Plaintiff was placed on administrative leave commencing on February 27, 1995, and Mr. Ault and Mr. Segura requested that Plaintiff turn over his FWS Identification, government credit card, and keys.

30. At the time Plaintiff requested leave, he was involved in two projects: The Bennet-Bartlett Land Exchange and the Inholdings Prioritization project.

31. In retrospect, Plaintiff would have been able to return to work long before completion of either project.

32. At the time the decisions to deny emergency leave to Plaintiff were made, Mr. Ault believed Plaintiff's sudden and prolonged absence would significantly hinder both projects, particularly the Bennet-Bartlett Land Exchange.

33. After discussing Plaintiff's situation with Larry Coe, Regional Realty Supervisor, Victor Segura, Acting Personnel Officer for FWS Region 2, and Robin Thorsen, Acting Regional Director for FWS Region 2, Mr. Ault denied Plaintiff's February 24, 1995 Application for

     Leave based primarily on the potential impact granting the extended leave on such short notice would have on the projects in which Plaintiff was involved.

34. Charles Ault never saw or heard directly from Plaintiff prior to Plaintiff's termination for being absent from duty without authorization in May 1995.

35. Prior to termination, Plaintiff was provided a removal letter, dated April 3, 1995, in which he was invited to request further explanation for his proposed removal, was afforded the opportunity to answer the proposal letter personally or in writing, to furnish evidence and affidavits in support of his response, and to plead any extenuating circumstances. Plaintiff was also informed in that letter that he could provide any medical data or raise any personal problems in his response. Finally, the letter stated that Plaintiff had fifteen (15) days to make his response.

36. On May 5, 1995, Plaintiff responded to the letter, mentioning a personal tragedy but not revealing that he was in prison, not discussing any possibility of obtaining work release, and not revealing when he might return to work.

37. Ms. Starnes determined that Plaintiff's response letter created no grounds for reconsideration of the proposal to terminate Plaintiff.

38. By letter dated May 11, 1995, Ms. Starnes notified Plaintiff of his termination, assuring him that she had considered his satisfactory work record but that based on his failure to clarify his current situation, FWS could not count on him to return to work.

39. At no time prior to Plaintiff's termination was he eligible for work release.

40. There was speculation at FWS, based primarily on Plaintiff's having been convicted of a crime, that Plaintiff might be violent.

CONCLUSIONS OF LAW

1.  To establish a claim for national origin discrimination based upon the denial of his LWOP request, Plaintiff must prove by a preponderance of the evidence that he was denied LWOP because of his national origin.

2.  To establish a claim of retaliation based upon denial of his leave requests, Plaintiff must prove by a preponderance of the evidence that he was intentionally denied leave because of his prior EEO activity and that there is a causal connection between his EEO activity and the denial of leave requests.

3.  FWS did not fail to follow its own procedures for granting leave requests, for Mr. Ortiz' obligation to serve a prison term does not fit the category of a "parental or family responsibility," an "unanticipated emergency" waiving advance notice requirements, or an event "beyond [Mr. Ortiz'] control" as stated in FWS's Attendance and Leave policy.

4.  Plaintiff has failed to meet his burden of proof that he was retaliated against for prior EEO activity when his leave requests were denied by Charles Ault.

5.  Plaintiff has failed to meet his burden of proof that he was discriminated against on the basis of national origin when Plaintiff was terminated from the Fish and Wildlife Service on May 11, 1995.

Dated August 10, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE